

1  SANDRA R. BROWN
   Acting United States Attorney
2  DENNISE D. WILLETT
   Assistant United States Attorney
3  Chief, Santa Ana Branch Office
   CHARLES E. PELL (Cal. Bar No. 210309)
4  Assistant United States Attorney
   Santa Ana Branch Office
5       8000 United States Courthouse
        411 West Fourth Street
6       Santa Ana, California  92701
        Telephone:  (714) 338-3542
7       Facsimile:  (714) 338-3561
        Email: Charles.E.Pell2@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                  SOUTHERN DIVISION

13  UNITED STATES OF AMERICA,      No. SACR17-00153-CJC

14          Plaintiff,             PLEA AGREEMENT FOR DEFENDANT
                                   VICTORIA CHAN
15            v.

16  VICTORIA CHAN,

17          Defendant.

18

19       1.   This constitutes the plea agreement between VICTORIA CHAN

20  ("defendant") and the United States Attorney's Office for the Central

21  District of California (the "USAO") in the investigation of

22  fraudulent EB-5 petitions for green cards, wire fraud conspiracy, and

23  international money laundering.  This agreement is limited to the

24  USAO and cannot bind any other federal, state, local, or foreign

25  prosecuting, enforcement, administrative, or regulatory authorities.

26                  DEFENDANT'S OBLIGATIONS

27       2.   Defendant agrees to:

28          a.   Give up the right to indictment by a grand jury and,

1   at the earliest opportunity requested by the USAO and provided by the
2   Court, appear and plead guilty to a three-count information in the
3   form attached to this agreement as Exhibit A or a substantially
4   similar form, which charges defendant with conspiracy to commit visa
5   fraud, in violation of 18 U.S.C. § 371 (count 1); conspiracy to
6   commit wire fraud, in violation of 18 U.S.C. § 1349 (count 2); and
7   international money laundering, in violation of 18 U.S.C.
8   §§ 1956(a)(2)(A), 2 (count 3).

9          b.   Not contest facts agreed to in this agreement.

10         c.   Abide by all agreements regarding sentencing contained
11  in this agreement.

12         d.   Appear for all court appearances, surrender as ordered
13  for service of sentence, obey all conditions of any bond, and obey
14  any other ongoing court order in this matter.

15         e.   Not commit any crime; however, offenses that would be
16  excluded for sentencing purposes under United States Sentencing
17  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
18  within the scope of this agreement.

19         f.   Be truthful at all times with Pretrial Services, the
20  United States Probation Office, and the Court.

21         g.   Pay the applicable special assessments at or before
22  the time of sentencing unless defendant lacks the ability to pay and
23  prior to sentencing submits a completed financial statement on a form
24  to be provided by the USAO.

25         h.   Make restitution at or before the time of sentencing,
26  based on financial ability, and not seek the discharge of any
27  restitution obligation, in whole or in part, in any present or future
28  bankruptcy proceeding.

3.    Defendant further agrees:

a.    Truthfully to disclose to law enforcement officials, at a date and time to be set by the USAO, the location of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, defendant's illegal activities, and to forfeit all right, title, and interest in and to such items, if any, specifically including all right, title, and interest in and to all United States currency, property and assets, including: (1) 13592 Brittle Brush Ct., Rancho Cucamonga, California; (2) 5528 Compass Pl., Rancho Cucamonga, California; (3) 5535 Compass Pl., Rancho Cucamonga, California; (4) 5555 Compass Pl., Rancho Cucamonga, California; (5) 5042 Morgan Pl., Rancho Cucamonga, California; (6) 10943 Stallion Way, Rancho Cucamonga, California; and (7) 6527 Etiwanda Ave, Etiwanda, California, which defendant admits constitute the proceeds of defendant's illegal activity in violation of Title 18, United States Code, Sections 371, 1343, and 1546(a).

b.    To the Court's entry of an order of forfeiture at or before sentencing with respect to these assets and to the forfeiture of the assets.

c.    To take whatever steps are necessary to pass to the United States clear title to the assets described above, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.    Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against these

3

properties.  With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant  waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment.  Defendant acknowledges that forfeiture of the assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

      e.    Not to assist any other individual in any effort falsely to contest the forfeiture of the assets described above.

      f.    Not to claim that reasonable cause to seize the assets was lacking.

      g.    To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

      h.    To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

      i.    That forfeiture of assets described above shall not be counted toward satisfaction of any special assessment, fine, costs, or other penalty the Court may impose.

4.    Defendant admits that defendant received unreported income for 2011-2017.  Defendant agrees to cooperate with the Internal Revenue Service in the determination of defendant's tax liability for those years. Defendant agrees that:

      a.    If requested to do so by the Internal Revenue Service,

defendant will file, prior to the time of sentencing, amended returns for the years subject to the above admissions, correctly reporting unreported income; will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns; will pay at or before sentencing all additional taxes and all penalties and interest assessed by the Internal Revenue Service on the basis of the returns; and will promptly pay all additional taxes and all penalties and interest thereafter determined by the Internal Revenue Service to be owing as a result of any computational error(s), based on financial ability.

    b.   Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant's returns after they are filed.

    c.   Defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

    d.   Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

    e.   Defendant will sign closing agreements with the Internal Revenue Service before sentencing, permitting the Internal Revenue Service to assess and collect the total sum of taxes due as determined by the IRS, as well as assess and collect the civil fraud penalty for each year and statutory interest, on the tax liabilities,

1  as provided by law.

2                        THE USAO'S OBLIGATIONS

3        5.    The USAO agrees to:

4              a.    Not contest facts agreed to in this agreement.

5              b.    Abide by all agreements regarding sentencing contained

6  in this agreement.

7              c.    At the time of sentencing, provided that defendant

8  demonstrates an acceptance of responsibility for the offenses up to

9  and including the time of sentencing, recommend a two-level reduction

10 in the applicable Sentencing Guidelines offense level, pursuant to

11 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

12 additional one-level reduction if available under that section.

13             d.    Recommend that defendant be sentenced to a term of

14 imprisonment no higher than the low end of the applicable Sentencing

15 Guidelines range, provided that the offense level used by the Court

16 to determine that range is 20 or higher and provided that the Court

17 does not depart downward in offense level or criminal history

18 category.  For purposes of this agreement, the low end of the

19 Sentencing Guidelines range is that defined by the Sentencing Table

20 in U.S.S.G. Chapter 5, Part A, without regard to reductions in the

21 term of imprisonment that may be permissible through the substitution

22 of community confinement or home detention as a result of the offense

23 level falling within Zone B or Zone C of the Sentencing Table.

24                        NATURE OF THE OFFENSES

25       6.    Defendant understands that for defendant to be guilty of

26 the crime charged in count 1 of the information, that is, conspiracy

27 to commit visa fraud, in violation of Title 18, United States Code,

28 Section 371, the following must be true: (1) Beginning in or about

                                 6

2008 and ending on or about April 2017, there was an agreement between two or more persons to commit visa fraud, where: (1a) defendant made or subscribed as true a false statement; (1b) defendant acted with knowledge that the statement was untrue; (1c) the statement was material to the activities or decisions of the United States Citizenship and Immigration Services ("USCIS"); that is, it had a natural tendency to influence, or was capable of influencing, USCIS's decisions or activities; (1d) the statement was made under oath or penalty of perjury; and (1e) the statement was made on an application or other document required by immigration laws or regulations; (2) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

7. Defendant understands that for defendant to be guilty of the crime charged in count 2 of the information, that is, conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349, the following must be true: (1) Beginning in or about 2008 through in or about April 2017, there was an agreement between defendant and one or more persons to commit wire fraud, where: (1a) defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (1b) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (1c) defendant acted with the intent to defraud, that is, the intent to deceive or

1  cheat; and (1d) the defendant used, or caused to be used, an
2  interstate wire communication to carry out or attempt to carry out an
3  essential part of the scheme; and (2) defendant became a member of
4  the conspiracy knowing of at least one of its objects and intending
5  to help accomplish it.
6      8.    Defendant understands that for defendant to be guilty of
7  the crime charged in count 3 of the information, that is,
8  international money laundering, in violation of Title 18, United
9  States Code, Section 1956(a)(2)(A), the following must be true:
10 (1) defendant transported money to a place in the United States from
11 or through a place outside the United States; and (2) defendant acted
12 with the intent to promote the carrying on of immigration fraud.
13 Defendant further understands that under 18 U.S.C. § 2, even though
14 defendant may not personally have committed the acts constituting a
15 charged offense, defendant may nevertheless be held criminally
16 responsible for that offense if she aided and abetted in its
17 commission.  To be guilty of aiding and abetting in the commission of
18 international money laundering, in violation of 18 U.S.C.
19 § 1956(a)(2)(A), the following must be true: first, the crime of
20 international money laundering was committed by someone; second,
21 defendant aided, counseled, commanded, induced or procured that
22 person with respect to at least one element of the crime; third,
23 defendant acted with the intent to facilitate the crime; and fourth,
24 defendant acted before the crime was completed.
25                      PENALTIES AND RESTITUTION
26      9.    Defendant understands that the statutory maximum sentence
27 that the Court can impose for a violation of Title 18, United States
28 Code, Section 371 (count 1), is: 5 years' imprisonment; a three-year

period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349 (count 2), is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1956(a)(2)(A) (count 3), is: 20 years' imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greatest; and a mandatory special assessment of $100.

12. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 45 years' imprisonment; a three-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offenses or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer (count 3), whichever is greatest; and a mandatory special assessment of $300.

13. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised

release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

15.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

FACTUAL BASIS

16.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 17 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

At all times relevant to this Plea Agreement, defendant was an attorney licensed by the California state bar.  Starting in or about 2008 and continuing through April 2017, defendant and her father T.C., a foreign national, defrauded the United States by exploiting the U.S. immigration "EB-5" visa program, which provides lawful U.S. permanent residence (a "green card") to foreigners, in exchange for requiring investment of $1,000,000 in a U.S. business (or $500,000 if the investment is in an economically distressed area) that must also create 10 full-time American jobs.  In their fraudulent EB-5 scheme, using California Investment Immigration Fund, LLC ("CIIF") and related entities, defendant's father convinced more than 100 foreign Chinese nationals to invest a total of more than $50,000,000 with CIIF and related companies.  However, rather than investing all of the funds into American businesses or construction projects, defendant and her father either refunded some of the funds to the EB-5 investors while their EB-5 petitions were pending, in direct violation of the EB-5 program, or stole millions of dollars to use for personal expenditures, including buying million-dollar homes.  As

11

a result of defendant and her father's fraudulent scheme, many foreign nationals were able to improperly obtain U.S. green cards through the EB-5 visa program, even though those foreigners did not in fact truly invest the required amounts of funds in U.S. businesses, nor were full-time American jobs created.

Defendant initially operated the immigration fraud scheme from Orange County, using an address on Chapman Avenue in Garden Grove, California. In addition, multiple EB-5 petitions that defendant sent to USCIS listed that address as the mailing address for the EB-5 petitioners. Most EB-5 petitions were mailed to and/or processed at the USCIS office in Orange County, which is located in Laguna Niguel, California.

Visa fraud conspiracy: To obtain an EB-5 green card, the U.S. immigration laws and regulations require an alien petitioner to submit an EB-5 petition, signed under penalty of perjury to USCIS. As part of the fraudulent immigration scheme, defendant submitted EB-5 petitions to USCIS that contained multiple false statements, including falsely representing that the EB-5 funds had been invested in construction projects, falsely representing that construction had taken place at the project locations, falsely representing that 10 full-time American jobs had been created, and failing to disclose that defendant had refunded some EB-5 petitioners' investments while their EB-5 petitions were pending, all in direct violation of the EB-5 visa program's rules. Defendant submitted approximately 130 EB-5 petitions where the majority contained such false information, signed by defendant, which defendant knew was false at the time she submitted the petitions to USCIS. For all of those fraudulent EB-5 petitions, the false information was material to the activities or

12

1  decisions of USCIS, that is, the information had a natural tendency
2  to influence, or was capable of influencing, USCIS's decisions or
3  activities.

4      In many cases, before signing and submitting EB-5 petitions to
5  USCIS, defendant did not even meet in person with the EB-5
6  petitioners, most of whom who were then in China.  Rather, the EB-5
7  petitions were often completed and signed in China and then emailed
8  to defendant in the United States.  In many cases, defendant would
9  sign the EB-5 petitions using the petitioners' names and then send
10 those hard copy petitions to USCIS with those fabricated signatures.
11 Although the aliens had authorized those EB-5 petitions by signing
12 the versions in China, the signatures on the EB-5 petitions that
13 defendant sent to USCIS were fabricated because defendant signed in
14 the petitioners' names on those petitions, instead of having the hard
15 copies from China with the aliens' true signatures sent to USCIS.

16     Defendant's father T.C. provided either full or partial refunds
17 to many of their EB-5 clients.  Some of the EB-5 clients received a
18 written personal guarantee from CIIF and/or defendant's father that
19 confirmed they would receive a refund of the EB-5 investment, even
20 though such a guarantee directly violated the EB-5 program, which
21 requires the entire EB-5 investment to be "at risk."  As part of
22 their scheme, defendant's father would routinely instruct defendant
23 how much to wire-transfer to investors to make those refunds, which
24 defendant followed by wire-transferring millions of dollars in
25 refunds to banks outside the United States.

26     Many of the EB-5 petitions for final green cards that defendant
27 submitted to USCIS were also fraudulent because no construction had
28 taken place at the purported project locations, so very few full-time

13

American jobs, if any, had been created.  Specifically, defendant submitted many EB-5 petitions that indicated that the petitioner had fulfilled the EB-5 program's requirements of 10 full-time employment positions, which was false because no construction had taken place at the project locations, many of which remained either vacant lots or empty buildings.

<u>Conspiracy to commit wire fraud</u>: In addition to filing EB-5 petitions with false information for their EB-5 clients, defendant and her father, and others, also siphoned EB-5 investors' funds that they then wrongfully used for their personal expenditures, instead of for EB-5 projects.

In or about September 2011, at her father's direction, defendant used approximately $434,000 originating from EB-5 investor funds to purchase a residential property in Diamond Bar, California, for approximately $994,000, which was purchased in defendant's name.  To do so, on or about August 18, 2011, defendant had transferred approximately $475,000 from a CIIF bank account ending in 6724 to a bank account in her name ending in 2238.

In or about March 2014, at her father's direction, defendant used approximately $197,000 originating from EB-5 investor funds to purchase a residential property in Rancho Cucamonga, California, in her name for a sales price of approximately $920,000.  To do so, on or about March 28, 2014, defendant wire transferred approximately $146,674 from an account in her name ending in 6198 to an escrow company for the purchase of that property, which was an interstate wire communication.

Approximately $418,000 in additional EB-5 investor funds were used to pay for the mortgages and property taxes for those two

14

properties.   When siphoning EB-5 investors' funds to use for personal expenditures, defendant acted with the intent to defraud and concealed from the investors that she and her father were improperly using those funds for their personal purposes.   The parties agree that for purposes of this plea agreement, the amount of EB-5 investors' funds wrongfully diverted to purchase and maintain the two properties purchased in defendant's name is approximately $1,049,716.

International money laundering: Because defendant and her father's immigration fraud scheme was international in scope, money was routinely transferred to and from the United States to further the scheme.   Specifically, on or about December 23, 2013, approximately $550,185 was wire-transferred from a foreign bank account to a bank account ending in 4588 in the United States in the name of one of the entities that defendant was using in the immigration fraud scheme.   Those funds were transported to further the immigration fraud scheme.   Then, on or about January 3, 2014, as a partial refund of that $550,000 received the month before in December 2013, defendant caused approximately $300,000 to be wire-transferred back for alien J.L. to a bank account in Hong Kong from a bank account in the United States that defendant was using in the immigration fraud scheme.   Those funds were transported to further the immigration fraud scheme, and by doing so, defendant acted with the intent to promote carrying on the immigration fraud scheme. Likewise, on or about June 23, 2015, approximately $550,000 was wire-transferred from a bank account at the Bank of Communications in Hong Kong ending in 7884 to a bank account ending in 8592 in the United States in the name of one of the entities that defendant was using in the immigration fraud scheme.   Then, on or about December 18, 2015,

as a partial refund of that $550,000 received in June 2015, defendant caused approximately $300,000 to be wire-transferred back for alien G.Z. to the same bank account at the Bank of Communications in Hong Kong from a bank account in the United States that defendant was using in the immigration fraud scheme.  Those funds were transported to further the immigration fraud scheme, and by doing so, defendant acted with the intent to promote carrying on the immigration fraud scheme.  Because most of the money for the immigration fraud scheme originated from overseas, there were many international transfers of funds to further the immigration fraud scheme.

SENTENCING FACTORS

17.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

18.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Count-1 (conspiracy to commit visa fraud)

Base Offense Level:            11          U.S.S.G. § 2L2.1(a)

| 100 or more documents: | +9 | U.S.S.G. § 2L2.1(b)(2)(C) |

Count-2 (conspiracy to commit wire fraud)

| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| $550k < loss < $1.5M: | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |

Count-3 (international money laundering)

| Base Offense Level: | 20 | U.S.S.G. § 2S1.1(a)(1) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

19.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

1          e.    The right to confront and cross-examine witnesses
2   against defendant.
3          f.    The right to testify and to present evidence in
4   opposition to the charges, including the right to compel the
5   attendance of witnesses to testify.
6          g.    The right not to be compelled to testify, and, if
7   defendant chose not to testify or present evidence, to have that
8   choice not be used against defendant.
9          h.    Any and all rights to pursue any affirmative defenses,
10  Fourth Amendment or Fifth Amendment claims, and other pretrial
11  motions that have been filed or could be filed.
12                  WAIVER OF APPEAL OF CONVICTIONS
13      22.  Defendant understands that, with the exception of an appeal
14  based on a claim that defendant's guilty pleas were involuntary, by
15  pleading guilty defendant is waiving and giving up any right to
16  appeal defendant's convictions on the offenses to which defendant is
17  pleading guilty.
18           WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK
19      23.  Defendant gives up the right to appeal all of the
20  following: (a) the procedures and calculations used to determine and
21  impose any portion of the sentence; (b) the term of imprisonment
22  imposed by the Court, provided it is within the statutory maximum;
23  (c) the fine imposed by the court, provided it is within the
24  statutory maximum; (d) the amount and terms of any restitution order;
25  (e) the term of probation or supervised release imposed by the Court,
26  provided it is within the statutory maximum; and (f) any of the
27  following conditions of probation or supervised release imposed by
28  the Court: the conditions set forth in General Orders 318, 01-05,

1  and/or 05-02 of this Court; the drug testing conditions mandated by

2  18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use

3  conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions

4  of probation or supervised release agreed to by defendant in

5  paragraph 2 above.

6      24.  Defendant also gives up any right to bring a post-

7  conviction collateral attack on the convictions or sentence, except a

8  post-conviction collateral attack based on a claim of ineffective

9  assistance of counsel, a claim of newly discovered evidence, or an

10  explicitly retroactive change in the applicable Sentencing

11  Guidelines, sentencing statutes, or statutes of convictions

12      25.  The USAO agrees that, provided all portions of the sentence

13  are at or below the statutory maximum specified above, the USAO gives

14  up its right to appeal any portion of the sentence

15  RESULT OF WITHDRAWAL OF GUILTY PLEA

16      26.  Defendant agrees that if, after entering guilty pleas

17  pursuant to this agreement, defendant seeks to withdraw and succeeds

18  in withdrawing any of defendant's guilty pleas on any basis other

19  than a claim and finding that entry into this plea agreement was

20  involuntary, then the USAO will be relieved of all of its obligations

21  under this agreement.

22  EFFECTIVE DATE OF AGREEMENT

23      27.  This agreement is effective upon signature and execution of

24  all required certifications by defendant, defendant's counsel, and an

25  Assistant United States Attorney.

26  BREACH OF AGREEMENT

27      28.  Defendant agrees that if defendant, at any time after the

28  signature of this agreement and execution of all required

19

certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

29.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any related charge, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action

1  against defendant, and defendant waives and gives up any claim under

2  the United States Constitution, any statute, Rule 410 of the Federal

3  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

4  Procedure, or any other federal rule, that the statements or any

5  evidence derived from the statements should be suppressed or are

6  inadmissible.

### COURT AND PROBATION OFFICE NOT PARTIES

7

8      30.  Defendant understands that the Court and the United States

9  Probation Office are not parties to this agreement and need not

10  accept any of the USAO's sentencing recommendations or the parties'

11  agreements to facts or sentencing factors.

12      31.  Defendant understands that both defendant and the USAO are

13  free to: (a) supplement the facts by supplying relevant information

14  to the United States Probation Office and the Court, (b) correct any

15  and all factual misstatements relating to the Court's Sentencing

16  Guidelines calculations and determination of sentence, and (c) argue

17  on appeal and collateral review that the Court's Sentencing

18  Guidelines calculations and the sentence it chooses to impose are not

19  error, although each party agrees to maintain its view that the

20  calculations in paragraph 17 are consistent with the facts of this

21  case.  While this paragraph permits both the USAO and defendant to

22  submit full and complete factual information to the United States

23  Probation Office and the Court, even if that factual information may

24  be viewed as inconsistent with the facts agreed to in this agreement,

25  this paragraph does not affect defendant's and the USAO's obligations

26  not to contest the facts agreed to in this agreement.

27      32.  Defendant understands that even if the Court ignores any

28  sentencing recommendation, finds facts or reaches conclusions

1  different from those agreed to, and/or imposes any sentence up to the
2  maximum established by statute, defendant cannot, for that reason,
3  withdraw defendant's guilty pleas, and defendant will remain bound to
4  fulfill all defendant's obligations under this agreement.  Defendant
5  understands that no one -- not the prosecutor, defendant's attorney,
6  or the Court -- can make a binding prediction or promise regarding
7  the sentence defendant will receive, except that it will be within
8  the statutory maximum.

9                        NO ADDITIONAL AGREEMENTS

10     33.  Defendant understands that, except as set forth herein or
11  in writing, there are no promises, understandings, or agreements
12  between the USAO and defendant or defendant's attorney, and that no
13  additional promise, understanding, or agreement may be entered into
14  unless in a writing signed by all parties or on the record in court.

15          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

16     34.  The parties agree that this agreement will be considered
17  part of the record of defendant's guilty plea hearing as if the
18  entire agreement had been read into the record of the proceeding.

19  AGREED AND ACCEPTED

20  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
21  CALIFORNIA

22  SANDRA R. BROWN
    Acting United States Attorney
23
                                                    10/12/2017
24  CHARLES E. PELL                    Date
    Assistant United States Attorney
25  Santa Ana Branch

26                                                  10/11/2017
    VICTORIA CHAN                      Date
27  Defendant

28

                            22

1   _____        10/11/17
    DIANE C. BASS, Esquire            Date
    Attorney for Defendant
2   VICTORIA CHAN

3

4                  CERTIFICATION OF DEFENDANT

5       I have read this agreement in its entirety.  I have had enough

6  time to review and consider this agreement, and I have carefully and

7  thoroughly discussed every part of it with my attorney.  I understand

    the terms of this agreement, and I voluntarily agree to those terms.
8
    I have discussed the evidence with my attorney, and my attorney has
9
    advised me of my rights, of possible pretrial motions that might be
10
    filed, of possible defenses that might be asserted either prior to or
11
    at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
12
    of relevant Sentencing Guidelines provisions, and of the consequences
13
    of entering into this agreement.  No promises, inducements, or
14
    representations of any kind have been made to me other than those
15
    contained in this agreement or other written agreement.  No one has
16
    threatened or forced me in any way to enter into this agreement.  I
17
    am satisfied with the representation of my attorney in this matter,
18
    and I am pleading guilty because I am guilty of the charges and wish
19
    to take advantage of the promises set forth in this agreement, and
20
    not for any other reason.
21

22  _____       10/11/2017
    VICTORIA CHAN               Date
23  Defendant

24

25           CERTIFICATION OF DEFENDANT'S ATTORNEY

26      I am VICTORIA CHAN's attorney.  I have carefully and thoroughly

27  discussed every part of this agreement with my client.  Further, I

    have fully advised my client of her rights, of possible pretrial
28

1  motions that might be filed, of possible defenses that might be
2  asserted either prior to or at trial, of the sentencing factors set
3  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
4  provisions, and of the consequences of entering into this agreement.
5  To my knowledge: no promises, inducements, or representations of any
6  kind have been made to my client other than those contained in this
7  agreement; no one has threatened or forced my client in any way to
8  enter into this agreement; my client's decision to enter into this
9  agreement is an informed and voluntary one; and the factual basis set
10 forth in this agreement is sufficient to support my client's entry of
11 guilty pleas pursuant to this agreement.

12

13 DIANE C. BASS, Esquire                    Date  10/11/17
   Attorney for Defendant
14 VICTORIA CHAN

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT
9                    FOR THE CENTRAL DISTRICT OF CALIFORNIA
10                             SOUTHERN DIVISION
11   UNITED STATES OF AMERICA,              No.
12               Plaintiff,                 I N F O R M A T I O N
13        v.                                [18 U.S.C. § 371: Conspiracy to
                                            Commit Visa Fraud; 18 U.S.C.
14   VICTORIA CHAN,                         § 1349: Conspiracy to Commit Wire
                                            Fraud; 18 U.S.C. § 1956(a)(2)(A):
15               Defendant.                 International Promotional Money
                                            Laundering; 18 U.S.C. § 2(a):
16                                          Aiding and Abetting; 18 U.S.C.
                                            § 2(b): Causing an Act to be Done]
17
18        The Acting United States Attorney charges:
19                       INTRODUCTORY ALLEGATIONS
20        At all times relevant to this Information:
21        1.   The U.S. immigration "EB-5" visa program provided lawful
22   U.S. permanent residence (a "green card") to foreigners, in exchange
23   for requiring investment of $1,000,000 in a U.S. business (or
24   $500,000 if the investment was in an economically-distressed area)
25   that must also create 10 full-time American jobs.
26        2.   The EB-5 visa program's rules required that the $500,000 or
27   $1,000,000 investment be used in the U.S. business; any amount not so
28   used did not count towards meeting the EB-5 program's $500,000 or

**EXHIBIT**

**A**

$1,000,000 investment requirement.  The EB-5 visa program's rules also required that the entire $500,000 or $1,000,000 investment be "at risk," which thus proscribed guaranteeing a refund of any part of the investment.

3.    The United States Citizenship and Immigration Services ("USCIS") office responsible for adjudicating EB-5 applications was located in Laguna Niguel, California, which is located in Orange County, within the Central District of California.

4.    Defendant VICTORIA CHAN ("CHAN") was an attorney licensed to practice law in the State of California.

5.    From 2008 through 2017, defendant CHAN, her relative Co-Conspirator No. 1, a foreign national, and Co-Conspirator No. 2, a Chinese national, worked together to convince more than 100 foreign Chinese nationals to invest millions of dollars in their fraudulent EB-5 scheme.  In that fraudulent scheme, more than 100 EB-5 applications with false information were filed with USCIS, including for criminal fugitives from China.

6.    Defendant CHAN, Co-Conspirator No. 1, and Co-Conspirator No. 2 used various entities in their fraudulent EB-5 scheme, including California Investment Immigration Fund, LLC ("CIIF") and CIIF's related entities, such as CIIF Investment Group LP, California Investment Immigration Fund LLC, CIIF Hotel Group LP, and Harris Investment Immigration Fund LLC.

7.    These Introductory Allegations are incorporated by reference and re-alleged into each and every count of this Information as though fully alleged therein.

COUNT ONE

[18 U.S.C. § 371]

A.   THE OBJECT OF THE CONSPIRACY

8.   Beginning in or about 2008, and continuing through in or about April 2017, in Orange and Los Angeles Counties, within the Central District of California, and elsewhere, defendant CHAN, together with others known and unknown to the Acting United States Attorney, conspired and agreed with each other to knowingly and intentionally commit an offense against the United States, namely, visa fraud, in violation of Title 18, United States Code, Section 1546(a).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

9.   The object of the conspiracy was to be accomplished, in substance, as follows:

     a.   Co-Conspirator No. 1 would promote the fraudulent EB-5 scheme to prospective customers in the People's Republic of China ("PRC").

     b.   Defendant CHAN would submit EB-5 petitions with false information to USCIS's office located in Laguna Niguel, Orange County, California.

     c.   Defendant CHAN would sign the EB-5 petitions with false information that she submitted to USCIS, including falsely representing that the EB-5 funds had been invested in construction projects, falsely representing that construction had taken place at the project locations, falsely representing that 10 full-time American jobs had been created, and failing to disclose that defendant CHAN had refunded some EB-5 petitioners' investments while

3

1  their EB-5 petitions were pending, all in direct violation of the EB-
2  5 visa program's rules.
3          d.    Defendant CHAN would submit EB-5 petitions to USCIS on
4  behalf of some of her customers who ultimately were fugitives on the
5  PRC's 100 most wanted list, charged with crimes such as bribery.
6          e.    Defendant CHAN would list her residence or business
7  address as the EB-5 petitioner's address on the EB-5 petitions, which
8  included using an address in Garden Grove, California.
9          f.    Co-Conspirator No. 1 would provide a written refund
10 guarantee to some of defendant CHAN's EB-5 customers.
11         g.    In direct violation of the EB-5 program's rules, Co-
12 Conspirator No. 1 would provide full or partial refunds of the EB-5
13 investments to many EB-5 customers.
14         h.    Contrary to the representations in the EB-5 petitions
15 submitted to USCIS, defendant CHAN failed to cause any meaningful
16 construction at any of the purported EB-5 project locations.
17         i.    From in or about 2008 to in or about April 2017,
18 defendant CHAN would submit approximately 130 EB-5 petitions with
19 false information to USCIS.
20 C.   OVERT ACTS
21      10.   In furtherance of the conspiracy and to accomplish its
22 object, on or about the following dates, defendant CHAN and others
23 known and unknown to the Acting United States Attorney, committed
24 various overt acts in Orange and Los Angeles Counties, within the
25 Central District of California, and elsewhere, including, but not
26 limited to, the following:
27      Overt Act No. 1: On or about May 27, 2009, an unknown co-
28 conspirator wire-transferred approximately $200,000 from a bank

account in the name of CIIF ending in 8183 to Co-conspirator No. 2.

Overt Act No. 2: On or about June 4, 2009, an unknown co-conspirator wire-transferred approximately $500,000 from a bank account in the name of CIIF ending in 8183 to a bank account in Hong Kong for one of the Chinese fugitives, alien K.L.

Overt Act No. 3: On or about May 9, 2010, from a location in Orange County, California, defendant CHAN mailed an EB-5 petition for alien H.X. that listed an address in Garden Grove, California, for that EB-5 petitioner.  That EB-5 petition also listed a Garden Grove address for CIIF Investment Group LP.

Overt Act No. 4: On or about November 19, 2010, from a location in Orange County, California, defendant CHAN mailed an EB-5 petition for alien B.Y. that listed an address in Garden Grove, California, for that EB-5 petitioner.  That EB-5 petition also listed a Garden Grove address for CIIF Investment Group LP.

Overt Act No. 5: On or about August 3, 2011, defendant CHAN mailed documents related to alien B.Y.'s EB-5 petition to USCIS's office located in Laguna Niguel, California.

Overt Act No. 6: On or about November 7, 2013, defendant CHAN mailed an EB-5 petition on behalf of alien H.X. with false statements to USCIS's office located in Laguna Niguel, California.

Overt Act No. 7: On or about January 3, 2014, defendant CHAN wire-transferred approximately $300,000 to a foreign bank account as a refund to EB-5 petitioner J.L.

Overt Act No. 8: On or about January 28, 2014, defendant CHAN mailed an EB-5 petition on behalf of alien B.Y. with false statements to USCIS's office located in Laguna Niguel, California.

Overt Act No. 9: On or about December 18, 2015, at the direction of Co-Conspirator No. 1, defendant CHAN wire-transferred approximately $300,000 to a bank account at the Bank of Communications in Hong Kong as a refund to EB-5 petitioner G.Z.

Overt Act Nos. 10a – 10h: On or about the following dates, defendant CHAN and Co-Conspirator Nos. 1 and 2 opened the following bank accounts that listed a mailing address on Chapman Avenue in Orange County, California:

| Overt Act | Date | Name on Account | Last 4 Digits | Bank |
|-----------|------|-----------------|---------------|------|
| a | 07/08/2008 | Defendant CHAN | 2238 | East West Bank |
| b | 06/15/2009 | CIIF Investment Group LP | 8506 | East West Bank |
| c | 07/13/2010 | Defendant CHAN | 3713 | JPMorgan Chase |
| d | 12/23/2010 | Defendant CHAN | 5398 | Bank of America |
| e | 12/26/2010 | Harris Investment Immigration Fund LLC | 0776 | East West Bank |
| f | 04/22/2011 | Defendant CHAN | 9238 | Bank of America |
| g | 05/13/2011 | California Investment Immigration Fund, LLC | 1030 | East West Bank |
| h | 05/13/2011 | CIIF Hotel Group LP | 1048 | East West Bank |

COUNT TWO

[18 U.S.C. § 1349]

A.    THE OBJECT OF THE CONSPIRACY

11.   Beginning in or about 2008, and continuing through in or about April 2017, in Orange, Los Angeles, and San Bernardino Counties, within the Central District of California, and elsewhere, defendant CHAN and others known and unknown to the Acting United States Attorney, knowingly combined, conspired, and agreed to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

B.    THE MANNER AND MEANS OF THE CONSPIRACY

12.   The object of the conspiracy was to be accomplished, in substance, as follows:

        a.    Defendant CHAN would submit EB-5 petitions to USCIS that represented that the EB-5 investors' funds were being, or had been, invested in U.S. businesses.

        b.    In order to obtain the funds from the EB-5 investors, defendant CHAN, Co-Conspirator No. 1, and Co-Conspirator No. 2 would conceal from the EB-5 investors that defendant CHAN, Co-Conspirator No. 1, and Co-Conspirator No. 2 intended to use, had used, and continued to use, some of the funds originating from EB-5 investors for defendant CHAN's and others' personal expenditures, instead of for EB-5 purposes, which violated the EB-5 visa program's rules.

        c.    Defendant CHAN, Co-Conspirator No. 1, and Co-Conspirator No. 2 would use funds originating from EB-5 investors to make personal expenditures, including purchasing homes in defendant CHAN's name.

d.   Defendant CHAN would make wire transfers for such purchases, including interstate wire transfers.

C.   OVERT ACTS

13.   In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendant CHAN and others known and unknown to the Acting United States Attorney, committed various overt acts in Orange and Los Angeles Counties, within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1: On or about July 8, 2008, defendant CHAN opened a bank account in defendant CHAN's name, ending in 2238, listing a mailing address on Chapman Avenue in Garden Grove, California.

Overt Act No. 2: On or about May 13, 2011, an unknown co-conspirator opened a bank account ending in 1048 in the name of CIIF Hotel Group LP, with Co-Conspirator No. 1 and Co-Conspirator No. 2 as signatories, listing a mailing address on Chapman Avenue in Garden Grove, California.

Overt Act No. 3: On or about August 18, 2011, an unknown co-conspirator transferred approximately $630,000 of funds originating from EB-5 investors from CIIF Hotel Group LP's bank account ending in 1048 through another CIIF account into defendant CHAN's account ending in 2238.

Overt Act No. 4: On or about August 23, 2011, defendant CHAN wrote a check from the bank account ending in 2238 for approximately $434,690, which was used to purchase a residential property in Diamond Bar, California, in defendant CHAN's name for approximately $994,000.  That check, number 280, listed defendant CHAN's name and the address on Chapman Avenue, Garden Grove, California.

Overt Act No. 5: On or about March 28, 2014, defendant CHAN wire-transferred approximately $146,674 in funds originating from EB-5 investors from an account in her name ending in 6198 to an escrow company's bank account to purchase a property in Rancho Cucamonga, California, in her name for a sales price of approximately $920,000.

COUNT THREE

[18 U.S.C. §§ 1956(a)(2)(A), 2]

14.   On or about January 3, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant CHAN knowingly transported, transmitted, and transferred, and knowingly aided, abetted, counseled, commanded, induced, and procured another person to transport, transmit, and transfer, approximately $300,000 in funds to a place outside the United States, namely, Hong Kong, from and through a place inside the United States with the intent to promote the carrying on of specified unlawful activity, specifically, visa fraud, in violation of Title 18, United States Code, Section 1546(a).

SANDRA R. BROWN
Acting United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office

CHARLES E. PELL
Assistant United States Attorney
Santa Ana Branch Office